IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL ASSOCIATION OF CONSUMER ADVOCATES, et al.,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>KATHLEEN L. KRANINGER, in her official capacity as Director of the Consumer Financial Protection Bureau, et al.,<br><br>    *Defendants*. | No. 1:20-cv-11141 (JCB) |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' BRIEF ON MOOTNESS

The Court should reject the government's attempt to shield its illegally produced Taskforce report from judicial inspection and allow Plaintiffs' full case to move forward. Defendants' preface to the report itself makes clear that its release "is just the beginning for implementing [its] recommendations" and that Defendants plan to take "action" on "a number of Taskforce recommendations."[1] Given the ongoing relevance of the report, it should be no surprise that the Taskforce's work continues to harm Plaintiffs and does so in ways that this Court can redress.

In this circumstance, Defendants have not met their "heavy" burden of establishing mootness. *N.H. Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 73 (1st Cir. 2006). As Defendants acknowledge, a claim for prospective relief is moot only where "interim relief or events have *completely* and irrevocably eradicated the effects of the alleged violation," Defs.' Br. Regarding

---

[1] CFPB, *Taskforce on Consumer Financial Law Report*, Volume I at 3 (January 2021).

Mootness ("Defs.' Br.") 5, ECF No. 40 (quoting *Thomas v. Town of Weymouth*, No. 16-cv-10091, 2017 WL 5257003 at *6 (D. Mass. Mar. 24, 2017)) (emphasis added); put differently, "[a] case is moot where it is impossible for a court to grant *any* effectual relief whatever to the prevailing party," *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 923 F.3d 209, 220 (1st Cir. 2019) (emphasis added) (quotation omitted). As explained below, Defendants' violations of FACA culminated in an irreparably biased report that continues to harm Plaintiffs, and those harms can be redressed by injunctive and declaratory relief.

## I.     Injunctive Relief

To begin, injunctive relief would redress the ongoing injuries caused by all four of Defendants' violations of the Federal Advisory Committee Act ("FACA"), including the three claims challenged by Defendants.[2] Each of these violations has contributed to the release of a tainted final report that is forcing Plaintiffs to divert significant resources towards analyzing the report, educating the public regarding its harmful effects and analytical flaws, and training their members on the threat it poses to consumer protection efforts. Pls.' Suppl. Br. on Mootness ("Pls.' Br.") at 4-7, ECF No. 39; Compl. ¶ 155. These injuries can be redressed through a use injunction, which would prevent Defendants from relying on the report and thereby alleviate Plaintiffs' need to divert resources towards combatting its harmful effects. Pls.' Br. at 6 (*citing, e.g.*, *Alabama-Tombigbee Rivers Coal. v. Dep't of Interior*, 26 F.3d 1103, 1107 (11th Cir. 1994)). Likewise, a limited use injunction would provide Plaintiffs with "ammunition in the arena of public opinion" by "removing the appearance of legitimacy" from the report. *Id.* (citing

---

[2] Defendants do not even argue that Plaintiffs' third claim, which alleges the failure to provide documents as required by FACA, is moot under these standards (nor have they argued that Plaintiffs lack standing to bring that claim).

2

*NAACP Legal Def. & Educ. Fund, Inc. v. Barr*, No. 20-cv-1132, 2020 WL 6392777 at *2 (D.D.C. Nov. 2, 2020)).

Defendants do not explain why these remedies are unavailable to address the above injuries. Instead, Defendants cherry pick the Complaint to mischaracterize Plaintiffs' injuries as wholly in the past (and therefore not redressable) and recycle various standing arguments that Plaintiffs have already addressed elsewhere. Neither approach has merit.

1. With respect to Plaintiffs' first claim, which alleges that Defendants ignored FACA's requirements in creating the Taskforce, Defendants assert that Plaintiffs suffered only a single injury that no longer exists—*i.e.*, the impairment of Plaintiffs' ability to study and inform the public about the Taskforce. Defs.' Br. at 5-6. The Complaint, however, makes clear that Plaintiffs suffer two other ongoing injuries. First, Defendants' violation of FACA's "requirements in the[] creation" of the Taskforce "facilitate[d] a biased set of recommendations," Compl. ¶¶ 6, 8, that continue to force Plaintiffs to "divert resources to . . . adapt their educational and advocacy work," *id.* ¶ 155. *See also* Pls.' Br. at 4 (citing Compl. ¶¶ 5-6, 91-99, 101, 116-21); Pls.' Opp. to Defs.' Mot. to Dismiss ("Opp.") 13-14, ECF No. 23. As Plaintiffs have explained, these injuries are redressable by a use injunction or a limited use injunction. Pls.' Br. at 5-6; *see also* Compl. at 49 (requesting a use injunction or any other relief the Court deems appropriate). Second, Plaintiffs continue to be deprived of the requisite public interest findings, which constitute information to which they are statutorily entitled. Compl. ¶¶ 140, 143; Opp. at 9-11. This too can be redressed by injunctive relief in the form of an order requiring Defendants to release the required information. Pls.' Br. at 7.³

---

³ Defendants again assert that Plaintiffs' informational injuries do not give rise to standing, Defs.' Br. at 6 n.4, but their arguments are repetitive of their previous filings and are wrong for the reasons explained in Plaintiffs' opposition to the motion to dismiss. Opp. at 9-12.

2. Defendants similarly ignore Plaintiffs' ongoing injuries from the Taskforce's failure to hold its meetings in public (Plaintiffs' second claim). Defendants assert that their lack of transparency no longer matters because the Taskforce will no longer hold any meetings at all. Defs.' Br. at 7-8. But the entire point is that, as alleged in the Complaint, "[t]he Taskforce's secrecy . . . [made] it more likely that recommendations favorable to industry [would] come to fruition." Compl. ¶ 146. And Plaintiffs must now divert resources toward analyzing, educating the public and their members about, and rebutting the report—a task made "significantly more difficult by the Taskforce's [previous] lack of transparency." *Id.* ¶ 155. Far from "completely and irrevocably eradicat[ing]" Plaintiffs' injuries, Defendants' decision to rush out a report prepared in secret and then close up shop simply compounds them. *Town of Weymouth*, 2017 WL 5257003, at *6.

Defendants also insist that the "only relief" Plaintiffs seek for this claim is an injunction barring the Taskforce from continuing to operate in secret. Defs.' Br. at 8. But the Taskforce's lack of transparency warrants a use injunction barring Defendants from relying on the product of an unlawful process—one that continues to harm Plaintiffs. Pls.' Br. at 5-6; *see also* Compl. at 49 (requesting such relief). That "meaningful relief" more than warrants allowing this claim to continue.

3. Defendants' arguments about Plaintiffs' fourth claim, which alleges that the Defendants violated FACA's requirement that the Taskforce be "fairly balanced," 5 U.S.C. App. 2 § 5(b)(2), (c), are simply more of the same. As to Professor Engel's standing, Defendants reiterate their mistaken belief that only an order placing Professor Engel on the Taskforce would remedy her injuries and then further assert that, had Plaintiffs sought this hypothetical form of relief, it would now be moot. Defs.' Br. at 9-10. But the relief that Professor Engel *actually*

seeks—a use injunction against the product of a committee from which she was unlawfully denied a fair chance to join—continues to be a viable means of redressing her injuries, and remains unquestionably live.

As to all of the Plaintiffs, Defendants do not even argue that Plaintiffs' diversion-of-resources injuries no longer exist or that they are not redressable. Rather, Defendants assert that these injuries are too speculative or are otherwise not cognizable. Defs.' Br. at 10-11. Plaintiffs have already explained why these arguments fail as a matter of standing, *see* Opp. at 18-19 (citing, *e.g.*, *Nkihtaqmikon v. Impson*, 503 F.3d 18, 28 (1st Cir. 2007)), and they fare no better with respect to mootness. Moreover, as Defendants themselves acknowledge, "it is no longer necessary . . . to speculate" as to the report's contents or Defendants' intentions to act on the report, Defs.' Br. at 10-11: even a preliminary review reveals that the report recommends many measures that would be harmful to consumers.[4] Likewise, Defendants have made no effort to hide their plans to take "action" on "a number of Taskforce recommendations," and have explicitly stated that the report's release "is just the beginning for implementing [its] recommendations."[5] Plaintiffs have therefore provided far more than speculation to support their injuries—especially at the motion to dismiss stage. In any event, because the Court can remedy Plaintiffs' injuries via a use injunction or a limited use injunction, Plaintiffs' fourth claim is not moot. *See* Pls.' Br. at 5-6.[6]

---

[4] *See, e.g.*, CFPB, *Taskforce on Consumer Financial Law Report*, Volume II at 79 (January 2021) (recommending that Congress consider repealing various protections in the CARD Act, including restrictions on marketing credit cards to consumers age 21 and under).

[5] *Taskforce on Consumer Financial Law Report*, Volume I, *supra* note 1, at 2.

[6] Defendants also suggest that Plaintiffs should amend their Complaint in order to meet their "burden of clearly alleging definite facts to demonstrate that jurisdiction is proper." Defs.' Br. at 11 (quoting *Impson*, 503 F.3d at 25). As explained at the January 6 hearing and in various filings, the Complaint adequately alleges the injuries Plaintiffs continue to suffer and the relief the Court should grant. *See, e.g.,* Pls.' Br. at 4-5; Opp. at 8 (quoting *Dubois v. U.S. Dep't of Agric.*, 102

## II.     Declaratory Relief

Plaintiffs' claims are also redressable by declaratory relief because Plaintiffs could use a declaratory judgment "to later obtain further relief," including in "subsequent proceedings" in which the Bureau relies on the Taskforce's recommendations. *Unión de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n, AFL-CIO*, 884 F.3d 48, 58 (1st Cir. 2018); *Byrd v. U.S. EPA*, 174 F.3d 239, 244 (D.C. Cir. 1999) (declaratory judgment can provide relief for FACA violations even after the committee has disbanded because the relief provides "ammunition" to combat the effects of an advisory committees' work product).

Defendants rely on *ACLU v. Conference of Catholic Bishops* to assert that declaratory relief is unavailable because its issuance "would be merely advisory." Defs.' Br. at 12 (quoting 705 F.3d 44, 53 (1st Cir. 2013)). This reliance is misplaced. In contrast to the instant case, the plaintiffs in *ACLU* sought to challenge wholly past conduct with no ongoing cognizable harms to the plaintiffs. 705 F.3d at 53-54 (challenging the constitutionality of an "expired" federal contract under which all payments had been made and all obligations fulfilled).[7] Accordingly, the First Circuit found that declaratory relief would serve only to "deem[] past conduct illegal." *Id.* at 53. In so holding, the First Circuit recognized that declaratory judgment may still provide relief in cases that continue to present "a substantial controversy . . . of sufficient immediacy and reality." *Id.* at 54 (emphasis omitted).

This is precisely the case here. *See* Pls.' Br. at 7-10. Indeed, the First Circuit has found declaratory relief to be available in substantially similar circumstances. In *Unión de Empleados*

---

F.3d 1273, 1281-82 (1st Cir. 1996) for the proposition that "general factual allegations of injury . . . suffice" at the pleading stage). Nevertheless, Plaintiffs would be happy to amend their Complaint if the Court would find it helpful.

[7] Notably, *ACLU* did not involve a FACA challenge.

*de Muelles de Puerto Rico*, the First Circuit concluded that a challenge to an international union's decision to place a local union in a trusteeship was not moot—even though the trusteeship dissolved—because declaratory judgment could remedy the plaintiff's ongoing injuries. 884 F.3d at 58. The court explained that declaratory judgment could "be used as a predicate for further relief" by providing the plaintiff with the ability to challenge the "effects of the trusteeship," including a merger between two local unions. *Id.* at 59. Similarly, and especially given Defendants' statements that they plan to take action based on the report, declaratory relief will provide Plaintiffs with "ammunition for [their] attack on the [Taskforce'] findings in subsequent agency proceedings that make use of the [report]." *Byrd*, 174 F.3d at 244. Thus, "the controversy over the validity of the [Taskforce report] is sufficiently real and immediate to" warrant declaratory judgment. *Unión de Empleados,* 884 F.3d at 59.[8]

Because all of Defendants' violations have caused Plaintiffs ongoing injuries that are redressable by both injunctive and declaratory relief, none of Plaintiffs' claims is moot. The Court should therefore deny the government's motion to dismiss.

Dated: January 20, 2021                                Respectfully submitted,

                                                       */s/ Kristen Miller*

                                                       Kristen Miller (D.C. Bar No. 229627)*
                                                       John Lewis (D.C. Bar No. 1033826)*
                                                       Sean Lev (D.C. Bar No. 449936)*
                                                       Democracy Forward Foundation

---

[8] Defendants assert that the second and third elements of relief—which ask for an injunction setting aside the Taskforce charter and barring the Taskforce from continuing to meet—are also moot given the Taskforce members' resignations and the impending expiration of the charter. Defs.' Br. at 12-13. While Plaintiffs acknowledge that these elements of relief are likely no longer appropriate in such circumstances, their claims remain live for the reasons explained above.

1440 G St. NW #8162Washington, DC 20005
(202) 448-9090
kmiller@democracyforward.org
jlewis@democracyforward.org
slev@democracyforward.org

David A. Nicholas (BBO# 553996)
Of Counsel
Wolf Popper LLP
20 Whitney Road
Newton, MA 02460
(617) 964-1548
dnicholas@wolfpopper.com

*Counsel for Plaintiffs*

Michael Landis (CO Bar No. 50135)*
Center for Public Interest Research
1543 Wazee St., Ste. 400
Denver, CO 80202
(303) 573-5995 ext. 389
mlandis@publicinterestnetwork.org

*Counsel for U.S. PIRG*

*admitted pro hac vice